**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**ALEXIS NEGRON,**

     **Plaintiff,**

**-vs-**                    **Case No. 6:04-cv-1831-Orl-22DAB**

**JO ANNE B. BARNHART, Commissioner**
**of Social Security,**

     **Defendant.**
_____

## MEMORANDUM OPINION AND ORDER

The Plaintiff brings this action pursuant to the Social Security Act (the Act), as amended, Title 42 United States Code Section 405(g), to obtain judicial review of a final decision of the Commissioner of the Social Security Administration (the Commissioner) denying his claim for Disability Insurance Benefits (DIB) under the Act.

The record has been reviewed, including a transcript of the proceedings before the Administrative Law Judge (ALJ), the exhibits filed and the administrative record, and the pleadings and memoranda submitted by the parties in this case. Oral argument has not been requested.

For the reasons that follow, the decision of the Commissioner is **affirmed.**

### *I. BACKGROUND*

**A.**  **Procedural History**

Plaintiff filed for a period of disability and DIB benefits on January 25, 2002. R. 51-53. He alleged an onset of disability on October 18, 1999, due to lower back and right buttock pain with radiation into his right leg, and depression. R. 51, 57, 255. His application was denied initially and

upon reconsideration. R. 33, 36, 42-43. Plaintiff requested a hearing, which was held on April 13, 2004, before Administrative Law Judge Albert Tutera (hereinafter referred to as "ALJ"). R. 246-58. In a decision dated June 24, 2004, the ALJ found Plaintiff not disabled as defined under the Act through the date of his decision. R. 11-26. Plaintiff timely filed a Request for Review of the ALJ's decision. R. 7-10. The Appeals Council denied Plaintiff's request on December 3, 2004. R. 3-6. Plaintiff filed this action for judicial review on December 16, 2004. Doc. No. 1.

### B.  Medical History and Findings Summary

Plaintiff's medical history is set forth in detail in the ALJ's decision. By way of summary, Plaintiff complained of back pain, leg pain, and depression. After reviewing Plaintiff's medical records and Plaintiff's testimony, the ALJ found that Plaintiff suffered from degenerative disc disease of the lumbar spine with chronic lower back pain, which was a "severe" medically determinable impairment, but did not meet or medically equal one of the impairments listed in Appendix 1, Subpart P, Regulations No. 4. R. 17. The ALJ determined that Plaintiff retained the residual functional capacity (RFC) to perform light work, with no more than occasional climbing, balancing, stooping, kneeling, crouching or crawling. R. 18. In making this determination, the ALJ found that Plaintiff's allegations regarding his limitations were not totally credible for the reasons set forth in the body of the decision.[1] R. 18. Based upon Plaintiff's RFC, the ALJ determined that Plaintiff could not perform past relevant work. R. 19. The ALJ found that the additional restrictions did not significantly erode the occupational base reflected in the Medical-Vocational Guidelines (the grids), 20 C.F.R. Pt. 404, Subpt. P, App. 2, and concluded that Plaintiff could perform work existing in significant numbers in

---

[1] Within the body of the decision, the ALJ discredited Plaintiff's reported limitations based on several inconsistencies between those limits, medical findings and Plaintiff's history of changing his story regarding lower back pain with certain doctors. R. 18.

the national economy. R. 19. Accordingly, the ALJ determined that Plaintiff was not under a disability, as defined in the Act, at any time through the date of the decision. R. 19.

Plaintiff now asserts that the ALJ erred by relying upon the grids, rather than obtaining vocational expert (VE) testimony, because Plaintiff suffered non-exertional impairments. Second, he asserts that the ALJ erred by failing to consider limitations imposed by treating and examining physicians. For the reasons that follow, the decision of the Commissioner is **AFFIRMED**.

## *II. STANDARD OF REVIEW*

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971). The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla – *i.e.,* the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) and *Richardson*, 402 U.S. at 401).

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560; *accord, Lowery v. Sullivan*, 979 F.2d

835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings).

### *A. RFC AND LIMITATIONS IMPOSED BY THE TREATING AND CONSULTING PHYSICIANS*

Plaintiff asserts that the ALJ erred by ignoring the limitations established by certain of his treating and consultative physicians. The Commissioner argues the ALJ gave the proper weight to the medical opinions in the record and his RFC finding was more restrictive than any of the treating physicians' opinions.

Residual functional capacity is an assessment based on all relevant evidence of a claimant's remaining ability to do work despite his impairments. 20 C.F.R. § 404.1545(a); *Lewis v. Callahan*, 125 F.3d 1436,1440 (11th Cir. 1997). The focus of this assessment is on the doctor's evaluation of the claimant's condition and the medical consequences thereof. *Id.* Substantial weight must be given to the opinion, diagnosis and medical evidence of a treating physician unless there is good cause to do otherwise. *See Lewis*, 125 F.3d at 1440; *Edwards*, 937 F.2d at 583; 20 C.F.R. §§ 404.1527(d), 416.927(d). If a treating physician's opinion on the nature and severity of a claimant's impairments is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with the other substantial evidence in the record, the ALJ must give it controlling weight. 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). Where a treating physician has merely made conclusory statements, the ALJ may afford them such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments. *See Wheeler v. Heckler*, 784 F.2d 1073, 1075 (11th Cir. 1986); *see also Schnorr v. Bowen*, 816 F.2d 578, 582 (11th Cir. 1987).

Plaintiff contends the ALJ disregarded the opinions of three treating and consulting physicians that Plaintiff needed to avoid repetitive or frequent bending and twisting and needed to avoid standing

for more than four hours a day. Plaintiff points to the opinion of Dr. Cox, who opined that Plaintiff should avoid any repetitive bending or lifting greater than 15 to 20 pounds. R. 130-31. Plaintiff also relies on Dr. Broom's opinion stating that Plaintiff was to avoid frequent bending, twisting, and lifting over 30 pounds. R. 145. Plaintiff also relies on the opinion of Dr. Perdomo, who stated that Plaintiff would be able to perform well in light duty work by avoiding standing for more than four hours a day, repetitive bending, or lifting over fifteen to twenty pounds. R. 159-60. Plaintiff contends these limitations would significantly erode the light[2] occupational base particularly because light work requires an individual to stand for at least 6 hours in an 8 hour day and Plaintiff's ability to stand for only four hours or avoid frequent bending and twisting would significantly impact his ability to perform light work. The Commissioner argues that no physician has offered an opinion that Plaintiff is disabled or cannot work.

Plaintiff's treatment history for the first two years after his injury is summarized in January 4, 2001 Independent Medical Exam report by Dr. Haddock, a specialist in non-surgical spine care. Dr. Haddock summarized as follows:

> [Plaintiff] relates that his current symptoms date back to 10/18/99. On that day while working for U.S. Seating Products Company he relates that he was lifting some plastic rolls when he developed low back region pain. The patient did relate to me that he had a prior injury back in what he described as the mid 1980s. He did relate that he had no significant sequelae to this back injury. He denied any significant low back region pain before this most recent accident of 1999. . . . He apparently had only been working for this company for about two to three months. . . Dr. Beckner saw the patient initially on 11/16/99. Dr. Beckner's impression was that the patient had chronic low back pain with acute exacerbation. At that time he noted the patient did have a prior history of a work related injury back in October of 1991. Apparently he had seen Dr. Westergan [Beckner's partner] and Dr. Imfeld [Haddock's partner] back

---

[2] Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. A job in this category also requires a good deal of walking or standing or sitting with pushing and pulling of arm or leg controls. *See* 20 C.F.R. § 404.1567(b).

> for the 1991 injury. It appeared that the patient had an MRI after the 1991 injury that revealed a central disc herniation at L5-S1 with no nerve root impingement. It also appears from Dr. Beckner's notes that the patient told him that he had always had back pain, that it was a chronic condition, but the most recent injury of October of 1999 had exacerbated his symptoms. Dr. Beckner treated the patient with conservative care and placed him at MMI on 12/28/99 with no new impairment or restrictions. The patient was seen again by Dr. Beckner on 1/14/00 at which time he was apparently requesting an MRI, but Dr. Beckner, it appears, did not feel that there was a need for an MRI for he did not feel it was a surgical situation. On the last visit with Dr. Beckner the patient also reported to Dr. Beckner that he really had not had any significant problems with the low back prior to the injury of 1999, which apparently was in contrast to the history Dr. Beckner had received prior to this. Additional notes include notes from Dr. Cox. Dr. Cox saw the patient initially on 2/3/00. His impression was that the patient had lumbosacral sprain/strain and rule out lumbar disc syndrome. The patient did have an MRI on 4/20/00. The MRI reportedly revealed desiccated disc with a large diffuse disc bulge at L5-S1 which [is] associated with hypertrophic change in the facet joints causes mild to moderate neural foraminal narrowing bilaterally. No focal disc protrusion or central canal stenosis identified. Dr. Cox recommended epidural blocks. Apparently epidural blocks were not completed. Dr. Cox placed the patient at maximum medical improvement on 6/20/00 and allowed him a 2% permanent partial impairment and apparently placed him on light duty restrictions. The patient was subsequently seen by Dr. Broom. I do have the note from Dr. Broom's IME evaluation on 8/18/00. Dr. Broom felt the patient had a strain/disc bulge by report. He did not recommend surgical intervention. He felt that the patient's symptoms appeared to be out of proportion to the findings. He felt the patient was at MMI [as of October 26, 2001] and allowed him a 6% permanent partial impairment, but felt that part if not all was related to the previous injury of 1991.

R. 140-41; *see also* 88, 102, 109, 144, 149, 211. Dr. Haddock's overall impression from the IME was that some of Plaintiff's subjective complaints outweighed the objective findings noted in the examination. R. 142.

Dr. Jassir noted on April 14, 2003 that Plaintiff had a series of lumbar epidural steroid injections which gave him significant relief of his symptoms. R. 229. A subsequent MRI from June 2003 showed a small central and left-sided focal extruded disc at L5-S1 without spinal stenosis. R.

226. Plaintiff had three epidural steroid injections in September 2003, administered by Dr. Jassir,[3] R. 215-21.

Dr. Beckner, the orthopedist who initially treated Plaintiff for his back injury, indicated that Plaintiff had no permanent impairment or restrictions as of November 16, 1999. R. 100. On June 28, 2000, Dr. Cox, a treating orthopedist, recommended that Plaintiff avoid repetitive bending, and lifting more than fifteen to twenty pounds. R. 130. On February 16, 2001, Dr. Broom, the treating spine specialist opined that Plaintiff should avoid frequent bending and twisting, and lifting over thirty pounds. R. 145. Dr. Perdomo, the consultative examiner, evaluated Plaintiff on May 23, 2002, and concluded that Plaintiff could perform light duty work, and should avoid standing for more than four hours, repetitive bending, and lifting more than fifteen to twenty pounds. R. 160. The non-examining state physician reviewed the record on August 28, 2002, and concluded that Plaintiff could lift or carry up to twenty pounds occasionally, stand or walk for four hours in an eight hour day and sit for six hours in an eight hour day. R. 186-93. Dr. Broom examined Plaintiff again on September 3, 2002 and reiterated that Plaintiff was at maximum medical improvement, for which the restrictions were to avoid frequent bending, twisting and lifting over 30 pounds. R. 211, 145.

The ALJ considered all of these opinions and found that Plaintiff could perform light work, requiring no more than occasional climbing, balancing, stooping, kneeling, crouching or crawling. R. 18. As the Commissioner properly contends, the ALJ essentially accepted the opinions of each of the examining physicians in finding that Plaintiff could perform light work, and rejected only the conclusion of Dr. Beckner, who imposed no restrictions on Plaintiff. In addition, many of Plaintiff's

---

[3] More current records were reportedly available from Dr. Jassir, but none were submitted. R. 214.

subjective complaints on which the restrictions are partially based are cited in the medical records, however, the ALJ rejected the Plaintiff's alleged physical limitations as inconsistent with the weight of the medical evidence and not wholly credible. The ALJ specifically noted that there was no objective evidence of the level of physical limitations described by Plaintiff. R. 18. The ALJ specifically referred to the opinions of Dr. Perdomo, the consultative examiner, and Dr. Cox, a treating physician, who both opined that Plaintiff could perform light work. R. 18. "Plaintiff's exaggeration of his objective findings at the examination by Dr. Martinez and changing his story regarding prior lower back pain with Dr. Becker were further indications of a lack of credibility on Plaintiff's part." R. 18.

The ALJ properly considered the limitations of the treating physicians and relied on substantial evidence to determine that Plaintiff was able to perform light work with certain postural limitations that the ALJ included in the analysis.

### B. APPLICATION OF THE GRIDS

Plaintiff claims that because he suffered pain from his degenerative disc disease, he had nonexertional limitations, precluding the application of the grids and requiring VE testimony. Plaintiff contends that the ALJ's findings are not supported by the evidence and therefore, the ALJ erred in finding that Plaintiff could perform other work in the national economy.

Once the ALJ finds that a claimant cannot return to his prior work, the burden of proof shifts to the Commissioner to establish that the claimant could perform other work that exists in the national economy. *Foote*, 67 F.3d at 1558. In determining whether the Commissioner has met this burden, the ALJ must develop a full record regarding the vocational opportunities available to a claimant. *Allen v. Sullivan*, 880 F.2d 1200, 1201 (11th Cir. 1989). This burden may sometimes be met through

exclusive reliance on the "grids." *Foote*, 67 F.3d at 1558. Exclusive reliance on the "grids" is appropriate where the claimant suffers primarily from an exertional impairment, without significant non-exertional factors. 20 C.F.R. Part 404, Subpart P, Appendix 2, § 200.00(e); *Foote*, 67 F.3d at 1559; *Heckler v. Campbell*, 461 U.S. 458 (1983) (exclusive reliance on the grids is appropriate in cases involving only exertional impairments, impairments which place limits on an individual's ability to meet job strength requirements).

Exclusive reliance is not appropriate "either when a claimant is unable to perform a full range of work at a given residual functional level or when a claimant has a non-exertional impairment that significantly limits basic work skills." *Walter v. Bowen*, 826 F.2d 996, 1002-3 (11th Cir. 1987). In almost all of such cases, the Commissioner's burden can be met only through the use of a VE. *Foote*, 67 F.3d at 1559. It is only when the claimant can clearly do unlimited types of work at a given residual functional level that it is unnecessary to call a VE to establish whether the claimant can perform work which exists in the national economy. In any event, the ALJ must make a specific finding as to whether the non-exertional limitations are severe enough to preclude a wide range of employment at the given work capacity level indicated by the exertional limitations. *Foote*, 67 F.3d at 1559.

In this case, the ALJ found that Plaintiff's ability to perform light work was not significantly affected by any non-exertional limitations[4]. R. 19. The only postural limitations that the ALJ included were no more than occasional climbing, balancing, stooping, kneeling, crouching and crawling. R. 18. Various treating or examining physicians opined that Plaintiff should avoid any

---

[4] Plaintiff does not argue on appeal that his depression presented a non-exertional impairment under the Regulations.

repetitive bending or lifting greater than 15 to 20 pounds (R. 130-31, 159-60), avoid frequent bending, twisting and lifting over 30 pounds (R. 145), and avoid standing for more than four hours a day. R. 159-60. Plaintiff contends these limitations would significantly erode the light occupational base that the ALJ assigned to Plaintiff. R. 19.

Plaintiff contends that light work requires an individual to stand for at least 6 hours in an 8 hour day and Plaintiff's ability to stand for only four hours would significantly impact his ability to perform light or sedentary work. He further argues that light work requires bending and twisting and the ALJ erred by not consulting a vocational expert to determine what jobs, if any, Plaintiff could perform with such limitations.

The Commissioner contends that the ALJ properly used the grids because Plaintiff has no non-exertional impairments that significantly limit basic work skills for light work. The Commissioner argues that neither the regulations nor the Social Security Rulings mention "bending" as a specific non-exertional limitation but break down "bending" into more specific postural maneuvers, such as stooping, kneeling, crouching and crawling. *See* Doc. No. 25-2, SSR 85-15. If an individual can engage in occasional stooping, kneeling, crawling or crouching the light occupational job base is intact. *Id.* at 7. According to the Regulations, some limitation on climbing and balancing will not ordinarily have a significant impact on the broad world of work. *Id.* at 7. The ALJ did consider Plaintiff's bending limitation because he applied the restriction that Plaintiff is to avoid more than occasional climbing, balancing, stooping, kneeling, crouching or crawling as additional limitations which did not significantly erode the occupational base in Rule 202.16. R. 18-19.

The Commissioner properly argues that Plaintiff has failed to show how the "twisting" limitation affects the light occupational job base since the term "twisting" is not used in the

Regulations. Plaintiff does not cite any regulations or case (and the Court cannot find any[5]) that discusses a separate limitation on "twisting" the abdomen or back that does not also include restrictions on bending or stooping, which the SSR 85-15 specifically addresses. *See, e.g., Duran v. Shala*, Case No. 92-4092, 1994 WL 408186, *5-8 (C.D. Ill. Apr. 12, 1994) (affirming RFC for light work even with limitation on bending and stooping, as well as twisting).

The Commissioner also contends that Dr. Perdomo's opinion during the consultative examination that Plaintiff could stand for no more than four hours per day was not supported by the record. The opinion of Dr. Perdomo, a consultative examiner whose specialty is family practice, is outweighed by those of Plaintiff's treating physicians, two orthopedists and a spine specialist, who provided treatment to Plaintiff for months and years and yet failed to limit Plaintiff to no more than four hours standing or walking in a day.

The ALJ considered Plaintiff's physical impairments, including degenerative disc disease and resulting pain, and the treatment records, and properly assigned an RFC for light work. The ALJ further specifically found that Plaintiff's capacity for light work was substantially intact with certain postural limitations, and had not been compromised by any nonexertional limitations. R. 18. Because avoidance of twisting and "bending" activities, applied as stooping, kneeling, crouching or crawling, did not erode the base for light work, it was unnecessary to call a VE to establish whether he could perform work existing in the national economy. *See Foote*, 67 F.3d at 1559. Accordingly, the ALJ was justified in his reliance upon the grids. *See id.*

### *IV. CONCLUSION*

---

[5] The majority of cases that discuss "twisting" refer to restrictions of repetitive manipulative twisting motions by the shoulder or hand, which is not at issue in this case.

The ALJ appropriately considered Plaintiff's circumstances and analyzed them in relation to the exacting disability standard under the Social Security Act.  For the reasons set forth above, the ALJ's decision is consistent with the requirements of law and is supported by substantial evidence.  Accordingly, the Court **AFFIRMS** the Commissioner's decision pursuant to sentence four of 42 U.S.C. § 405(g).  The Clerk of the Court is directed to enter judgment consistent with this opinion and, thereafter, to close the file.

**DONE** and **ORDERED** in Orlando, Florida on February 7, 2006.

*David A. Baker*

DAVID A. BAKER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record